UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROGELIO VILLA AVALOS,      )   Case No. EDCV 07-1407 JC
                           )
                Plaintiff, )
                           )   MEMORANDUM OPINION
          v.               )
                           )
                           )
MICHAEL J. ASTRUE,         )
Commissioner of Social     )
Security,                  )
                           )
                Defendant. )
_____    )

## I.    SUMMARY

On November 5, 2007,  plaintiff Rogelio Villa Avalos ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; November 7, 2007 Case Management Order, ¶ 5.

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **       DECISION**

6    On April 12, 2004, plaintiff filed an application for Supplemental Security

7    Income benefits.  (Administrative Record ("AR") 60-62).  Plaintiff asserted that he

8    became disabled on July 16, 2002, due to hepatitis B and psychiatric problems.

9    (AR 75-81).  The Administrative Law Judge examined the medical record and

10   heard testimony from plaintiff, who was represented by counsel, from plaintiff's

11   friend, and from medical and vocational experts, on January 8, 2007.  (AR 294-

12   320).

13   On April 26, 2007, the ALJ determined that plaintiff was not disabled

14   through the date of the decision.  (AR 10-16).  Specifically, the ALJ found:

15   (1) plaintiff suffered from the following severe impairments:  hepatitis C; a mood

16   disorder, not otherwise specified; and a history of drug and/or alcohol abuse (AR

17   15); (2) plaintiff's impairments or combination of impairments did not meet or

18   medically equal one of the listed impairments (AR 11, 15); (3) plaintiff retained

19   the residual functional capacity to perform medium work (AR 16);[2] (4) plaintiff

20   could not perform his past relevant work (AR 16); (5) there are a significant

21   number of jobs in the national economy that plaintiff could perform (AR 16); and

22

23   _____

24        [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190,

25   1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
     Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

26   application of harmless error standard in social security cases).

27        [2]The ALJ determined that plaintiff could: (i) lift and carry 25 pounds frequently and 50
     pounds occasionally; (ii) stand and/or walk for six hours in an eight-hour day; (iii) sit for six

28   hours in an eight-hour day; and (iv) perform simple, repetitive tasks in a nonpublic work setting
     if he has minimal contact with coworkers and supervisors.  (AR 15).

1 | (6) plaintiff's allegations regarding his limitations were not totally credible (AR
2 | 15).
3 |        The Appeals Council denied plaintiff's application for review.  (AR 3-5).
4 | **III.   APPLICABLE LEGAL STANDARDS**
5 |     **A.     Sequential Evaluation Process**
6 |        To qualify for disability benefits, a claimant must show that he is unable to
7 | engage in any substantial gainful activity by reason of a medically determinable
8 | physical or mental impairment which can be expected to result in death or which
9 | has lasted or can be expected to last for a continuous period of at least twelve
10 | months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
11 | § 423(d)(1)(A)).  The impairment must render the claimant incapable of
12 | performing the work he previously performed and incapable of performing any
13 | other substantial gainful employment that exists in the national economy.  Tackett
14 | v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
15 | § 423(d)(2)(A)).
16 |        In assessing whether a claimant is disabled, an ALJ is to follow a five-step
17 | sequential evaluation process:

        (1)    Is the claimant presently engaged in substantial gainful activity?  If
                so, the claimant is not disabled.  If not, proceed to step two.

        (2)    Is the claimant's alleged impairment sufficiently severe to limit
                his ability to work?  If not, the claimant is not disabled.  If so,
                proceed to step three.

        (3)    Does the claimant's impairment, or combination of
                impairments, meet or equal an impairment listed in 20 C.F.R.
                Part 404, Subpart P, Appendix 1?  If so, the claimant is
                disabled.  If not, proceed to step four.

///
///

(4)     Does the claimant possess the residual functional capacity to
perform his past relevant work?[3]  If so, the claimant is not
disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow him to adjust to other work that exists in
significant numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (claimant carries initial burden of proving
disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must
"'consider the record as a whole, weighing both evidence that supports and

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 416.945(a).

4

1  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>
2  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
3  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
4  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
5  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6  **IV.   DISCUSSION**

7        **A.   Treating Psychologist's Opinion**

8        Plaintiff contends that the ALJ erroneously failed to address the opinion of a
9  treating psychologist Dr. Lisa Shelton.  (Plaintiff's Motion at 2-3).  This Court
10  concludes that the ALJ did not materially err in his consideration of Dr. Shelton's
11  opinion, and that a reversal or remand is not warranted on this basis.

12                 **1.   Relevant Facts**

13        Between approximately July 2002 and December 2006, plaintiff was treated
14  by Dr. Donna Barrozo at the San Bernardino County Department of Behavioral
15  Health.  (AR 142-58, 257-81).  On July 23, 2002, during plaintiff's first visit, Dr.
16  Lisa Shelton, conducted an initial assessment of plaintiff.  (AR 146, 261).  The
17  record does not reflect that Dr. Shelton saw, assessed or treated plaintiff on any
18  other date.  Dr. Shelton noted that plaintiff was anxious and had a history of
19  depression, and opined that plaintiff suffered from a severe dysfunction (as
20  defined by the Department of Behavior Health), because he was unable to go and
21  find work due to depression and anxiety.  (AR 145-146, 260-61).  Dr. Barrozo
22  treated plaintiff with medication, including Seroquel and Zoloft, and, during the
23  course of treatment, noted that plaintiff's depression had decreased, that he was
24  sleeping better on the medications, and that his concentration was better on the
25  medication.  (AR 148-58, 259-75).

26        On June 25, 2004, consulting examiner Dr. Linda Smith conducted a
27  complete psychiatric evaluation of plaintiff.  (AR 179-86).  Dr. Smith diagnosed
28  ///

1  plaintiff with a mood disorder, not otherwise specified.   (AR 183).  She opined

2  that his prognosis was fair and that he had no functional impairments.  (AR 184).

3  On April 3, 2005, consulting examiner Dr. Sohini Parikh conducted a

4  complete psychiatric evaluation of plaintiff.  (AR 218-25).  Dr. Parikh diagnosed

5  plaintiff as having a mood disorder because of medical condition and a history of

6  polysubstance abuse in the past.  (AR 222).  She opined that he had no functional

7  impairments.  (AR 223).

8  On February 16, 2007, Dr. Smith conducted another complete psychiatric

9  evaluation.  (AR 282-93).  She reviewed plaintiff's medical records, including the

10  above-summarized medical records and examination reports.  (AR 282).   Dr.

11  Smith diagnosed plaintiff with polysubstance abuse, possibly abstaining and

12  alcohol abuse, unclear current status.  (AR 288).  She opined that plaintiff's

13  prognosis was fair and that he had no functional impairments.  (AR 289-92).

14  On January 8, 2007, during the administrative hearing, medical expert Dr.

15  Sidney Bolter, testified regarding, *inter alia*, plaintiff's alleged mental

16  impairments.  (AR 307-13).  Dr. Bolter reviewed plaintiff's medical records,

17  including those from Drs. Barrozo and Shelton.  (AR 307) (citing Exhibit 11F [AR

18  256-81]).  Dr. Bolter noted that plaintiff's physicians accepted plaintiff's

19  subjective complaints, but that such complaints were not supported by objective

20  evidence such as a mental status examination.  (AR 307-08).  Referring

21  specifically to Dr. Shelton's "check-off" mental status report, Dr. Bolter noted that

22  the record did not reflect that such assessment was based on any actual testing of

23  plaintiff's mental status.  (AR 308).  He further noted that the progress notes were

24  essentially a "recital of symptoms by the patient" followed by a conclusion

25  statement from the doctor without any real examination.  (AR 308).  Dr. Bolter

26  contrasted plaintiff's doctor's records with the reports of the consulting examiners

27  who had performed "reasonably good mental status exam[s]."  (AR 308).  Dr.

28  Bolter testified that it was his "overall read" that plaintiff "has depression in a

6

1   significant severity to cause limitations." (AR 310).  He further opined that
2   plaintiff was moderately limited in his activities, markedly limited in social
3   functioning, mildly limited in concentration, persistence and pace, and should be
4   limited to simple repetitive tasks in a non-public atmosphere.  (AR 310, 312).

5       In his decision, the ALJ pointed to Dr. Bolter's opinion regarding plaintiff's
6   treatment records (Exhibit 11F, which included Dr. Shelton's assessment).  (AR
7   13).  The ALJ noted that "Dr. Bolter opined that they contained primarily
8   subjective complaints with no objective, clinical findings to support the claimant's
9   allegations." (AR 13).  The ALJ essentially adopted Dr. Bolter's opinion in
10  assessing plaintiff's mental residual functional capacity, finding that plaintiff
11  could "perform simple, repetitive tasks in the competitive workplace on a routine
12  or sustained basis if he ha[d] no contact with the general public and only minimal
13  contact with coworkers and supervisor".  (AR 14).

14                  **2.    Applicable Law**

15      In Social Security cases, courts employ a hierarchy of deference to medical
16  opinions depending on the nature of the services provided.  Courts distinguish
17  among the opinions of three types of physicians:  those who treat the claimant
18  ("treating physicians") and two categories of "nontreating physicians," namely
19  those who examine but do not treat the claimant ("examining physicians") and
20  those who neither examine nor treat the claimant ("nonexamining physicians").
21  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A
22  treating physician's opinion is entitled to more weight than an examining
23  physician's opinion, and an examining physician's opinion is entitled to more
24  weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion
25  of a treating physician is entitled to greater weight than that of a non-treating

26  _____

27      [4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
28  draw bright line distinguishing treating physicians from non-treating physicians; relationship is
    better viewed as series of points on a continuum reflecting the duration of the treatment
    relationship and frequency and nature of the contact) (citation omitted).

1  physician because the treating physician "is employed to cure and has a greater
2  opportunity to know and observe the patient as an individual." Morgan v.
3  Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.
4  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

5          The treating physician's opinion is not, however, necessarily conclusive as
6  to either a physical condition or the ultimate issue of disability. Magallanes v.
7  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
8  759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not
9  contradicted by another doctor, it may be rejected only for clear and convincing
10 reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
11 quotations omitted). The ALJ can reject the opinion of a treating physician in
12 favor of a conflicting opinion of another examining physician if the ALJ makes
13 findings setting forth specific, legitimate reasons for doing so that are based on
14 substantial evidence in the record. Id. (citation and internal quotations omitted);
15 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by
16 setting out detailed and thorough summary of facts and conflicting clinical
17 evidence, stating his interpretation thereof, and making findings) (citations and
18 quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite
19 "magic words" to  reject a treating physician opinion – court may draw specific
20 and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer
21 his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He
22 must set forth his own interpretations and explain why they, rather than the
23 [physician's], are correct." Id. "Broad and vague" reasons for rejecting the
24 treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,
25 602 (9th Cir. 1989).

26          **3.   Analysis**
27          Here, the record reflects that the ALJ did in fact consider Dr. Shelton's July
28 2002 assessment of plaintiff. As noted above, the medical expert expressly

referenced it during his testimony at the hearing, and the ALJ expressly referenced the expert's opinion regarding Dr. Shelton's and Dr. Barrozo's records in the ALJ's written decision.  (AR 13, 307-08).  To the extent the ALJ's disability determination is viewed as being inconsistent with Dr. Shelton's opinion, it is reasonable to infer that he discounted such opinion for the reason articulated by the medical expert and expressly referenced in the ALJ's decision, *i.e.*, it contained primarily subjective complaints with no objective, clinical findings to support plaintiff's allegations.  This was an appropriate, and a clear and convincing basis upon which to reject Dr. Shelton's assessment.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings).

Accordingly, a remand or reversal is not warranted based upon the ALJ's rejection of Dr. Shelton's one-time assessment.

## B.   Plaintiff's Credibility

Plaintiff contends that a remand or reversal is warranted because the ALJ rejected plaintiff's testimony without discussing it.  (Plaintiff's Motion at 5-6).  This claim is specious.

### 1.   Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse

1   credibility finding must be based on clear and convincing reasons.  <u>Carmickle v.</u>

2   <u>Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1160 (9th Cir.

3   2008) (citations omitted).  The only time this standard does not apply is when

4   there is affirmative evidence of malingering.  <u>Id.</u>  The ALJ's credibility findings

5   "must be sufficiently specific to allow a reviewing court to conclude the ALJ

6   rejected the claimant's testimony on permissible grounds and

7   did not arbitrarily discredit the claimant's testimony."  <u>Moisa v. Barnhart</u>, 367

8   F.3d 882, 885 (9th Cir. 2004).

9         To find the claimant not credible, an ALJ must rely either on reasons

10  unrelated to the subjective testimony (<u>e.g.</u>, reputation for dishonesty), internal

11  contradictions in the testimony, or conflicts between the claimant's testimony and

12  the claimant's conduct (<u>e.g.</u>, daily activities, work record, unexplained or

13  inadequately explained failure to seek treatment or to follow prescribed course of

14  treatment).  <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d at 883; <u>Burch</u>, 400 F.3d at

15  680-81; SSR 96-7p.  Although an ALJ may not disregard such claimant's

16  testimony solely because it is not substantiated affirmatively by objective medical

17  evidence, the lack of medical evidence is a factor that the ALJ can consider in his

18  credibility assessment.  <u>Burch</u>, 400 F.3d at 681.

19        Questions of credibility and resolutions of conflicts in the testimony are

20  functions solely of the Commissioner.  <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th

21  Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable

22  and is supported by substantial evidence, it is not the court's role to

23  "second-guess" it.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

24              **2.    Analysis**

25        Contrary to plaintiff's suggestion, the ALJ rejected plaintiff's testimony for

26  multiple clear and convincing reasons which are reflected in his decision and

27  which are supported by substantial evidence in the record.

28

1    Initially, the ALJ pointed to plaintiff's "markedly inconsistent statements

2    regarding his marital history, education, gang membership, prison and jail history,

3    and drug and/or alcohol abuse . . . [which] inconsistencies rendered the veracity of

4    his entire testimony highly suspect." (AR 14).  As the ALJ noted, the record

5    reflects that in June 2004, plaintiff told Dr. Smith that he had been a gang member,

6    had a prior history of drug abuse, had been married three times, had three children,

7    had completed the sixth grade, used to drink alcohol daily until 2003, had used

8    heroin until five years prior, had been arrested 30 times for being under the

9    influence and traffic offenses, and had been in prison five times.  (AR 11-12)

10   (citing AR 180-81).  However, as the ALJ also noted, in February 2007, plaintiff

11   told Dr. Smith that he had not been a gang member, had been married only once,

12   had no children, had completed nine years of formal education, had been arrested

13   only 10 times for DUIs and drugs, had served only one year in jail, and had never

14   been sent to prison.  (AR 13) (citing AR 283-85).  Dr. Smith further noted that

15   plaintiff's statements to her regarding drug and alcohol use were inconsistent with

16   what plaintiff had told others.  (AR 285).  She pointed out that plaintiff did not

17   appear to be entirely genuine and truthful with her and that he attempted to

18   manipulate the interview and to dodge questions.  (AR 286).  As noted above,

19   such inconsistencies are a permissible basis upon which to discount plaintiff's

20   credibility.

21   The ALJ also pointed to the inconsistency between plaintiff's claim that he

22   suffered from a disabling mental impairment and the fact that he had been treated

23   relatively conservatively, *i.e.*, that he had denied any psychiatric hospitalization.

24   (AR 14).  This too was a permissible basis upon which to reject plaintiff's

25   credibility.

26   Finally, the ALJ noted that plaintiff's testimony regarding the disabling

27   nature of his mental impairments was inconsistent with the opinions of Drs. Smith

28   and Parikh, and gave greater weight to the opinions of the doctors in light of their

11

1    expertise.  (AR 14).  Such an inconsistency with objective medical opinions is a

2    factor that the ALJ can consider in his credibility assessment.

3        In short, the ALJ's assessment of plaintiff's credibility was free from

4    material error and provides no basis for remand or reversal.

5        **C.    Medication Side Effects**

6        Plaintiff contends that a remand or reversal is warranted because the ALJ

7    erroneously failed properly to evaluate evidence regarding plaintiff's reported side

8    effects of her medications.  (Plaintiff's Motion at 3-4).

9        Here, plaintiff complained that his medications, which included Zoloft and

10   Seroquel, caused him to be alert and drowsy, and to suffer a high fever, body

11   aches, cold sweats, and weakness.  (AR 108).  A claimant bears the burden of

12   demonstrating that his use of medications caused a disabling impairment.  See

13   Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985) (claimant failed to meet

14   burden of proving medication impaired his ability to work because he produced no

15   clinical evidence).  Plaintiff offers no objective evidence that his medications

16   affected him in the ways that he claims, let alone that they interfered with his

17   ability to work.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001)

18   (Side effects not "severe enough to interfere with [plaintiff's] ability to work" are

19   properly excluded from consideration).  The only evidence regarding these alleged

20   side effects is plaintiff's own statements to his doctors and the Administration, and

21   plaintiff's testimony at the hearing.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217

22   (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness

23   side-effect of [claimant's] medication" in making an RFC determination as "the

24   ALJ took into account those limitations for which there was record support that

25   did not depend on [the claimant's] subjective complaints").  While plaintiff's

26   statements and testimony cannot be rejected solely because the objective medical

27   evidence does not support the severity of his impairment, the ALJ, as noted above,

28   properly rejected his testimony by using ordinary techniques of credibility

1   evaluation, and by providing specific, clear and convincing reasons, supported  for

2   by the record, that his testimony was generally not credible.  See Thomas, 278

3   F.3d at 960 (citation and internal quotation marks omitted).  Accordingly, it was

4   not necessary for the ALJ specifically to discuss such alleged side effects.  See

5   Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ only required to

6   explain why probative evidence has been rejected).

7          In this case, plaintiff fails to demonstrate that a reversal or remand is

8   warranted based upon the ALJ's failure specifically to consider and discuss

9   plaintiff's alleged side effects from his medication.

10          **D.    Hypothetical Question to Vocational Expert**

11          Plaintiff alleges that a reversal or remand is appropriate because the ALJ

12   erroneously omitted Dr. Shelton's opinion and the side effects of plaintiff's

13   medications from the hypothetical questions posed to the vocational expert.

14   (Plaintiff's Motion at 7).  This Court disagrees.

15          A hypothetical question posed by an ALJ to a vocational expert must set out

16   all the limitations and restrictions of the particular claimant.  Light v. Social

17   Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing

18   Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)); Embrey, 849 F.2d at 422

19   ("Hypothetical questions posed to the vocational expert must set out *all* the

20   limitations and restrictions of the particular claimant . . . .") (emphasis in original;

21   citation omitted).  However, an ALJ's hypothetical question need not include

22   limitations not supported by substantial evidence in the record.  Osenbrock, 240

23   F.3d at 1163-64 (citation omitted).

24          As discussed above, the ALJ properly rejected Dr. Shelton's opinion in

25   favor of the opinions of the consulting examiners and the medical expert.

26   Moreover, plaintiff's claim that he suffered side effects from his medications is

27   supported only by his own statements and testimony which the ALJ appropriately

28   rejected.  See Thomas, 278 F.3d at 960 (rejecting claim that ALJ improperly

13

1  excluded side effects caused by medication from hypothetical question where only
2  evidence regarding side effects was plaintiff's own statements and testimony and
3  ALJ properly determined that plaintiff's testimony generally not credible).

4      Accordingly, the ALJ properly omitted such opinions and the alleged
5  medication side effects from the hypothetical questions posed to the vocational
6  expert.  A remand or reversal on this basis is not warranted.

7  **V.    CONCLUSION**

8      For the foregoing reasons, the decision of the Commissioner of Social
9  Security is affirmed.

10     LET JUDGMENT BE ENTERED ACCORDINGLY.

11 DATED:   March 18, 2009

12                                    ___/s/_____
13                                    Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE
14